**MY FAVORITE MUFFIN TOO, INC., Plaintiff,**

v.

**DK HOLDINGS, INC., Robert Katz and Debbie Katz, Defendants.**

**No. 98 C 6665.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 20, 1999.

Marc P. Seidler, Julie Ann Garvey, Seidler & McErlean, Chicago, IL, for My Favorite Muffin Too, Inc., plaintiff.

Harold B Katz, Grover, Weinstein, Stauber & Friedman, Miami Beach, FL, for DK Holdings Inc, defendant.

Harold B Katz, Grover, Weinstein, Stauber & Friedman, Miami Beach, FL, for Robert—Katz, defendant.

Harold B Katz, Grover, Weinstein, Stauber & Friedman, Miami Beach, FL, for Debbie Katz, defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

My Favorite Muffin Too, Inc. seeks a judgment confirming an arbitration award against DK Holdings, Inc. ("DK Holdings"), DK Holding Corporation Too, Inc. ("DK Too"), Robert Katz, and Debbie Katz. (R. 9.) The defendants oppose confirmation, arguing that this action is subject to an automatic stay under the Bankruptcy Code, 11 U.S.C. § 362, and alternatively that the arbitrator manifestly disregarded the law in reaching her decision. Therefore, they ask us to vacate the arbitration award. (R. 12.) Additionally, the defendants contend that DK Too is not a party to this action, and that My Favorite Muffin should not be allowed correct the corporate defendant's name. The defendants' positions are meritless; thus, we grant My Favorite Muffin's motion to correct the corporate defendant's name to DK Holding Corporation Too, Inc. and enter judgment confirming the arbitration award.

On October 11, 1990, Debbie Katz executed a franchise agreement with My Favorite Muffin on behalf of DK Holdings, in which she personally guaranteed performance of the agreement. (Defs.' Ex. A, Franchise Agreement at 29–30.) Robert Katz witnessed the execution. DK Holdings, however, was not then and never became a legally incorporated entity. Instead, in May 1991, the Katzes incorporated DK Too. (Defs.' Ex. B, Articles of Incorporation of DK Too; Florida Certificate of Incorporation.) Apparently, DK Too undertook performance of the franchise agreement. (*See* Defs.' Ex. L, checks representing royalty payments under the agreement from DK Too to My Favorite Muffin.)

On July 29, 1997, the Katzes filed a petition for personal bankruptcy protection under Chapter 13 of the Bankruptcy Code. Approximately six weeks later, on September 16, 1997, DK Too also filed a bankruptcy petition.

Almost immediately thereafter, DK Too formally assumed the franchise agreement obligations:

> [T]he undersigned guarantor(s) hereby personally and unconditionally (a) guarantees to My Favorite Muffin, Too, Inc. ("Franchisor") and its successors and assigns that DK Holding Corp. Too, Inc., a Florida corporation ("Franchisee") shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreement.

(Defs.' Ex. C, Guaranty and Assumption of Obligations (dated Sept. 29, 1997) ("Guaranty").) The Guaranty also provides that "[e]ach of the undersigned consents and agrees that: … (2) he shall render any payment or performance required under the Franchise Agreement upon demand if Franchisee fails or refuses punctually to do so." Both Katzes signed the Guaranty: Debbie wrote "President" after her signature, while Robert wrote "Vice Pres" after his.

On August 14, 1998, My Favorite Muffin filed the arbitration claim at issue in this case against DK Holdings and the Katzes. (Defs.' Ex. D, Demand for Arbitration.)

When discovery revealed that DK Holdings did not exist, the arbitrator granted My Favorite Muffin's motion to add DK Too. (Pl.'s Ex. G, Arbitration Order of Mar. 3, 1999.) After a hearing, the arbitrator concluded that the Katzes were personally liable under the franchise agreement and the Guaranty. (Defs.' Ex. F, Opinion of June 18, 1999.) She awarded My Favorite Muffin $151,069.25 in damages under the two contracts, and $1,317.02 in arbitration costs;[1] liability was joint and several among the Katzes and DK Too, and the Katzes were held liable in their individual and corporate capacities. Additionally, the arbitrator enjoined the Katzes from competing against My Favorite Muffin within three miles of the franchise site before February 2001.

Now, My Favorite Muffin asks this Court to enter judgment confirming the arbitration award. The defendants, of course, oppose this request. Their primary argument is that the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, precludes this Court from ruling on My Favorite Muffin's motion. Specifically, the defendants contend that the two ongoing bankruptcy proceedings activated § 362(a)(3)'s stay of "any act to obtain possession of property of the estate."

■ The defendants misconceive the nature of our task. For purposes of the automatic stay provisions, bankruptcy courts distinguish between judgments and attempts to enforce judgments. *See, e.g., In re Garofalo's Finer Foods, Inc.,* 186 B.R. 414, 436 n. 17 (N.D.Ill.1995) ("It is well established that claims arising post-petition are not subject to the automatic stay. The question here, however, is not whether the automatic stay precludes [these claims]. Rather, the question is whether enforcement of these claims is prohibited by the stay." (citations omitted)); *see also In re McKnight,* 136 B.R. 891, 893 (Bankr.S.D.Ga.1992); *In re Anderson,* 23 B.R. 174, 175 (Bankr.N.D.Ill. 1982). Here, My Favorite Muffin explicitly recognizes this distinction and seeks nothing more than a judgment. (R. 13, My Favorite Muffin's Reply at 3 ("[M]erely seeking to confirm the arbitrator's award is not commensurate with seeking to satisfy a judgment.").) Because this case involves post-bankruptcy petition debts and because My Favorite Muffin asks only for a judgment, § 362 does not operate to stay this action.[2]

■ As to the defendants' alternate argument—that the arbitrator manifestly disregarded the law—we expend few words because the defendants' position approaches frivolity. Although the defendants apparently know the appropriate standard of review for arbitration awards, they exclusively argue that the arbitrator misunderstood the facts before her. For example, they say that the arbitrator unreasonably found that the Katzes personally guaranteed performance of the franchise agreement when they signed the Guaranty because the Guaranty was really a novation releasing Debbie Katz from her personal liability under the agreement. Similarly they argue that a scrivener's error by My Favorite Muffin resulted in the franchise agreement with a non-existent corporation. Essentially, the defendants re-argue the evidence before the arbitrator; they do not cite a single case establishing a rule of law that the arbitrator ignored, or even arguably mis-applied. There are no grounds for vacating the arbitration award. Thus, we deny the de-

---

1. Out of the total administrative expense of $1,192.12, the arbitrator ordered the defendants to pay My Favorite Muffin $573.68 and the American Arbitration Association $21.06; from the total arbitrator compensation of $3,020.00, she ordered the defendants to pay My Favorite Muffin $743.34 and the Association $1,270.00. (Defs.' Ex. E, Award at 2.)

2. Section 362 does stay enforcement of our judgment, and My Favorite Muffin must obtain leave from the bankruptcy court before it may seek satisfaction of the judgment. *See In re Anderson,* 23 B.R. at 175–6.

**784**

fendants' motion to vacate the arbitration award and grant My Favorite Muffin's motion to confirm the arbitration award. (R. 9–1.)

■ Finally, we address a minor administrative matter, and grant My Favorite Muffin's motion to correct the name of the corporate defendant to DK Holding Corporation Too, Inc. (R. 9–2.) DK Too is the appropriate corporate defendant and, in essence, has been before this Court and the arbitrator (in the guise of its corporate officers, the Katzes) from the beginning. DK Too does not argue that allowing the correction will prejudice it in any way.

## CONCLUSION

For these reasons, we grant My Favorite Muffin's motion to confirm the arbitration award and to correct the name of the corporate defendant. (R. 9.) Additionally, we deny the defendants' motion to vacate the arbitration award. (R. 12.) The Clerk of the Court shall enter final judgment in this case in accordance with Federal Rule of Civil Procedure 58.