**Paul CONNER, Plaintiff,**

v.

**Howard HOWE, Defendant.**

**No. IP 02–0287–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 8, 2004.

Clifford W. Shepard, Clifford W. Shepard, Indianapolis, IN, for Plaintiff.

Todd J. Kaiser, Ogletree Deakins Nash Smoak & Stewart PC, Indianapolis, IN, for Defendants.

### *ENTRY*

BARKER, District Judge.

This case is before the Court on a motion to dismiss for lack of subject matter jurisdiction and cross motions for partial summary judgment. Plaintiff, Paul Conner, has moved for summary judgment pursuant to Fed.R.Civ.P. 56 with respect to his claims under the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"). In response, Defendant, Howard Howe, counters that this court should dismiss the complaint pursuant to Fed.R.Civ.P.12(b)(1) because it lacks subject matter jurisdiction. Howe further argues that any FDCPA violation must be excused in light of a bona fide error defense. In addition, Howe has filed his own counter motion for summary judgment seeking judgment in his favor on Conner's pendent state laws claims of statutory deception, attorney deception and abuse of process.

## BACKGROUND

This case grows out of a "payday" loan transaction that Defendant, an attorney, was hired to collect when Plaintiff, the borrower, defaulted. A "payday" lender accepts post-dated checks from borrowers in exchange for smaller cash payouts up front. If a borrower does not repay the loan earlier, the loan is considered paid when the post-dated check is deposited and clears the bank.

On October 3, 2000, Paul Conner entered into a "payday" loan agreement with Instant Cash Advance ("ICA"), a company engaged in the business of making such loans and formerly a co-defendant in this litigation. In February of 2000, Conner filed a Chapter 13 bankruptcy petition and, at the time he entered into the payday loan arrangement at issue, the bankruptcy was still pending. Conner's October 3, 2000 payday loan was in the amount of $150.00, which amount he received in exchange for his post-dated check in the total amount of $183.00. The amount of the post-dated check received by ICA includes the amount of the cash provided as well as a pre-determined finance charge. The terms of this transaction compute to an annual interest rate of 286.79%. Conner's post-dated check to ICA was returned for insufficient funds, which became the debt that Defendant Howe, the attorney, was engaged to collect.

Howard Howe is engaged in the regular practice of law, collecting unpaid debts on behalf of clients. In order to recover on this particular loss, ICA sent notice to Howe of the debt owed to it by Conner, and on September 12, 2001, Howe filed a lawsuit against Conner to collect the amount due on the NSF check written by Conner to ICA. Howe's lawsuit against Conner sought treble damages from Conner, pursuant to Ind.Code § 34–4–30–1. This lawsuit against Conner was ultimately dismissed on October 1, 2001 without prejudice, due to the effect of the automatic stay emanating from Conner's bankruptcy.

Approximately three weeks prior to Howe's filing of the lawsuit against Conner on behalf of ICA, on August 16, 2001, the Indiana Supreme Court decided the case of *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind.2001). In *Livingston*, the Court ruled on a certified question submitted by several federal district court judges who were presiding over class action law suits in their courts that had been brought against lenders. The class actions arose under Indiana statutes relating to high interest rates that were being assessed on payday loans. In *Livingston*, the Court held that payday lenders, like ICA, were imposing finance charges in excess of those allowed by the Indiana Uniform Consumer Credit Code and that when a finance charge exceeds 72% of the loan principal, the lenders are engaging in loan sharking, in violation of IC § 35–45–7–2.

After being sued by Howe for collection of the debt, Conner filed this lawsuit in federal court against Howe, ICA, and two other individuals affiliated with ICA, alleging violations of state and federal law. In an October 3, 2003 settlement agreement with ICA and co-defendants David Klain and Sarann Warner, Conner received $4,000 in exchange for a dismissal and release among other things, of all claims in any manner arising out of or related to those claims, matters, and facts set forth or described in this lawsuit. The terms of the release specifically excluded Howe as a released party, leaving him as the sole remaining defendant in this case.

## STANDARD OF REVIEW

When a party challenges a district court's subject matter jurisdiction, the party invoking jurisdiction has the burden of establishing that all jurisdictional requirements have been satisfied. *Kontos v.*

*U.S. Dept. of Labor,* 826 F.2d 573, 576 (7th Cir.1987). When deciding a Fed.R.Civ.P. 12(b)(1) motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir.1995). Nevertheless, the court may look beyond the jurisdictional requirements of a complaint and consider whatever evidence has been submitted by the parties on the issue to determine whether subject matter jurisdiction exists. *Id.*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on a particular issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to go beyond the pleadings to cite evidence which creates a genuine factual dispute on issues for which it has the burden of proof at trial, thereby precluding summary judgment. *Id.* at 322, 106 S.Ct. 2548; *Liu v. T & H Machine, Inc.* 191 F.3d 790, 796 (7th Cir.1999). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in his favor on a material question, the court must enter summary judgment against him. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## ANALYSIS

### A. SUBJECT MATTER JURISDICTION

Howe has moved to dismiss Conner's FDCPA claims for lack of subject matter jurisdiction, contending that: (1) Conner has been compensated by previously released parties for acts upon which his federal claims are based resulting in there being no remaining case or controversy; (2) alternatively, Howe contends he is entitled to an equitable credit which would negate any remaining case or controversy; and (3) the bankruptcy court is the exclusive venue in which Conner may seek relief.

1. *Effect of Prior Release & Settlement with Co–Defendants on Ongoing Case or Controversy*

Howe contends that Conner's relief, and thus all his claims, are premised on one act, his filing of the underlying lawsuit against Conner on behalf of ICA. Since Conner has already been compensated by settlement for any injuries resulting from that one central and controlling act, Howe maintains that no case or controversy continues to exist with respect to Conner's FDCPA claims. Howe's argument rests on the premise that all the original defendants were jointly and severally liable and acted in concert to cause the alleged single harm. When several independent actors concurrently or consecutively produce a single, indivisible injury, each actor is held jointly responsible for the entirety of damages resulting from the concerted activity. *Watts v. Laurent,* 774 F.2d 168, 179 (7th Cir.1985).

To eliminate abusive debt collection practices, Congress enacted in 1968 the

FDCPA. *See* 15 U.S.C. § 1692(a). Under the terms of the statute, the damages available for a violation include any actual damages and an amount not to exceed $1,000 in additional damages, as determined by the court based upon its review of the frequency, persistence and nature of any noncompliance by the debt collector. 11 U.S.C. § 1692k. Generally, courts agree that this $1,000 limitation prevents a plaintiff from recovering more than $1,000 in additional damages per proceeding, no matter how many provisions of the FDCPA a debt collector violated. *Peter v. GC Services L.P.*, 310 F.3d 344, 352 n. 5 (5th Cir.2002); *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir.1994); *Raimondi v. McAllister & Associates, Inc.*, 50 F.Supp.2d 825, 828 (N.D.Ill.1999). Howe refers us to a recent decision by Judge Richard L. Young of our court interpreting the $1,000 limitation as preventing a recovery of more than $1,000 in additional damages, regardless of the number of debt collectors jointly involved in violating the Act. *See Adams v. Pollard*, IP 01–1929–C–Y/K, Entry On Defendants Motion To Dismiss And Motion For Summary Judgment (S.D.Ind. Sept. 25, 2003).

In *Adams*, multiple debt collectors were accused of jointly violating the FDCPA. Judge Young held that when a Plaintiff has received the maximum compensation permitted under the statute from a single debt collector source, there is no longer a case or controversy under the FDCPA upon which the court may base continued subject matter jurisdiction. *Id* at 8. While we are informed by Judge Young's insightful analysis and discussion, we perceive a significant distinction between his case and ours. Here, we are dealing with different roles among defendants: a debt collector (Howe), and the creditors/employees of the creditor. Hence, in our case, there are no multiple "debt collectors," only Howe.

 In enacting the FDCPA, Congress stated that its purpose was to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Thus, under the Act, creditors—those persons or entities who extended the credit in the first instance and who seek to collect their own debts—are not subject to the provisions of the FDCPA. *Pettit v. Retrieval Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir.2000). By definition, ICA, a creditor who hired Howe as a debt collector is not vicariously liable for the attorney's FDCPA violation. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir.1996). Similarly, to hold a defendant creditor jointly and severally liable for acting in concert with its debt collector would contravene the stated purpose of the FDCPA. Debt collectors cannot avoid liability under this statute by claiming to have been jointly liable with a creditor who has already settled. That interpretation does nothing to deter abusive debt collection, which is the intent of this statute. Because ICA as a creditor is not liable under the FDCPA, it is not jointly and severally liable with Howe for damages arising from his violation of the Act.

 Howe argues, in the alternative, that he is entitled to a $4,000 credit or setoff which would have the effect of eliminating any further recovery under the monetary limits in the FDCPA and vitiates the case or controversy requirement. In his opening brief, Howe maintains that Indiana law mandates that a surviving defendant is entitled to a credit for the amounts paid by released parties for the same injury. However, Howe appears to concede in his reply brief that the principles of Indiana tort law are not applicable in the context of an FDCPA claim. The issue of substantive liability for violations of the FDCPA is a matter determined

under federal law, and that statute expressly allows additional damages not to exceed $1,000 dollars, regardless of the amount of actual damages.

■ Under other, related principles of federal law, a defendant found liable under a federal statute has a right to contribution or set off from another party only if such entitlement arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law. *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 638, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 90–91, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). Applying those guidelines, neither the FDCPA nor its sister act, the Fair Credit Reporting Act, has been found to support an express or implied right to indemnity or contribution. *McMillan v. Equifax Credit Information Services, Inc.,* 153 F.Supp.2d 129, 132 (D.Conn.2001); *Irwin v. Mascott,* 94 F.Supp.2d 1052, 1058 (N.D.Cal.2000); *Kay v. First Continental Trading, Inc.,* 966 F.Supp. 753, 754–55 (N.D.Ill.1997). The FDCPA itself contains no provision creating an implied or express right of contribution, indemnification or equitable credit, and Howe has not contended or shown that federal common law creates such a right. We therefore hold that Howe is not entitled to any credit for amounts paid by released parties, and a case or controversy as to Conner's claims against Howe still exists.

### 2. *The Effect of Conner's Bankruptcy on the Validity of the Lawsuits*

■ Howe next asserts that his lawsuit against Conner was void under the applicable stay provisions of the Bankruptcy Code and that Conner's sole remedy against Howe was an action in bankruptcy for violation of the automatic stay. In pertinent part, 11 U.S.C. § 362(a)(1) provides:

(a) Except as provided in subsection (b) ... a petition filed ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced *before* the commencement of the case under this title, or to recover a claim against the debtor that arose *before* the commencement of the case under this title;

\* \* \* \* \* \*

(3) any act to obtain possession of property of the estate, or of property from the estate or to exercise control over property of the estate.

(Emphasis supplied.)

■ According to these provisions if the claim which the creditor is asserting against the debtor accrues *after* the filing of the voluntary Chapter 13 bankruptcy petition, the automatic stay under § 362(a)(1) does not prohibit the creditor from seeking to enforce his or her rights against the debtor. However, if the action seeks to obtain property of the estate, the lawsuit might be barred by § 362(a)(3).

Here, Conner filed his voluntary Chapter 13 bankruptcy petition on February 22, 2000, slightly more than seven months prior to his acquiring the payday loan from ICA, on October 3, 2000. Howe filed the collection lawsuit on behalf of ICA on September 12, 2001, while the bankruptcy proceeding was still pending. The bankruptcy was converted from a Chapter 13 to a Chapter 7 on August 6, 2002. Sometime after August 6, 2002, Conner filed an amended schedule to include post-petition creditors, including ICA. Thus, Conner's

payday loan became a post-petition debt; having not been included in his original Bankruptcy filing, it was not stayed under § 362(a)(1).

▮▮▮▮ Howe argues, though, in a bit of an admission against interest, that the lawsuit he filed to recover on the bad check was, in fact, an attempt to procure property of the bankruptcy estate and thus should have been stayed under § 362(a)(3). Thus, Howe contends, the lawsuit was void as a matter of law. This position, the effect of which would essentially bar any action on a post-petition debt or contract, has been consistently rejected by the courts. *See e.g., Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 995–996 (5th Cir.1985); *My Favorite Muffin Too, Inc. v. DK Holdings, Inc.*, 61 F.Supp.2d 781, 783 (N.D.Ill.1999). As these decisions note, actions to *obtain* a judgment on a cause of action which accrued post-petition are different from actions seeking to *enforce* a judgment. Title 11 U.S.C. § 362(a)(3) acts to stay any attempt to enforce a judgment, regardless of when it was obtained, but does not prevent an action seeking to obtain a judgment based upon a breach of a post-petition agreement. *See, Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.*, 33 B.R. 996, 1000 n. 2 (N.D.Ga.1983). Consequently, the lawsuit brought by Howe, because it sought to obtain a judgment but not necessarily to enforce it, was not void under the automatic stay, and further, Conner was not required to bring his claim within the jurisdiction of the bankruptcy court.

## B. *VIOLATION OF FDCPA*

▮▮▮▮ After the Indiana Supreme Court handed down its decision in *Livingston*, ICA was left holding a loan which was void in light of the fact that it imposed an interest rate in excess of 72% in violation of Indiana's loan sharking statute. (Ind.

Code § 35–45–7–2.) *Livingston*, 753 N.E.2d at 577. Loans made in violation of Ind.Code § 35–45–7–2 are void as a matter of law. Ind.Code § 35–45–7–4.

▮▮▮▮ Title 15 U.S.C. § 1692f(1), a part of the FDCPA, provides that:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

The FDCPA is a strict liability statute and a consumer need not show intentional conduct by the debt collector to be entitled to recover damages. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir.2004).

As admitted in his answer to the Complaint in this action, Howe sued Conner on behalf of ICA in an attempt to collect on the returned NSF check and the payday loan agreement. Howe thus attempted to collect an amount of interest not permitted by law and, since the loan agreement itself was void, Howe's suit against Conner sought an amount not permitted by a valid agreement establishing that debt. By his own admission(s), Howe has violated the FDCPA and Conner is entitled to pursue his statutory remedies. The remedial portion of the FDCPA, 15 U.S.C. § 1692k, allows a party to bring suit to recover actual damages in addition to the discretionary penalty against the debt collector in an amount not to exceed $1,000. The Act also allows for recovery of attorney fees incurred in connection with a successful enforcement action.

Conner contends that Howe violated the FDCPA when he filed the collection action, a contention which Howe never disputes. Rather, Howe seeks to avoid summary judgment based upon the affirmative defense that in filing the lawsuit he made a bona fide error. Accordingly, we turn now to address that averment.

### C. *BONA FIDE ERROR DEFENSE*

■ A debt collector is spared liability in an action brought pursuant to 15 U.S.C. § 1692k, if the debt collector can show by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, despite the maintenance of procedures reasonably adapted by him to avoid any such error. 15 U.S.C. § 1692k(c); *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir.1997). Howe argues that he is entitled to the bona fide error defense because, when he filed the lawsuit against Conner, he was unaware of Conner's pending bankruptcy. Had he been aware of the bankruptcy, Howe claims he never would have filed suit against Conner.

However, in making this argument, Howe ignores the obvious nonsequitor in his analysis. Conner does not claim that Howe's filing of the lawsuit against him during the pendency of his bankruptcy violated the FDCPA. His claim is based on Howe's admitted attempt to collect on the illegal and therefore void loan. The fact of the pendency of the bankruptcy is irrelevant to the bona fide error defense, because it is not a defense at all to Howe's filing the suit on the basis of a loan made void under Indiana law. As previously noted, the filing of a collection suit based on a post-bankruptcy loan agreement does not in and of itself violate the bankruptcy stay provisions. Assuming Howe's error in filing suit during the pendency of the bankruptcy was, indeed, an excusable mistake, in terms of its being a defense to this lawsuit, it is entirely irrelevant, because

this suit is premised on an entirely different error by Howe.

The more compelling issue, in reviewing a bona fide error defense in this case, is whether the filing of a lawsuit in an attempt to collect the principal and interest on a loan of a type which the Indiana Supreme Court found to be illegal and void only three weeks earlier was a bona fide error on the part of Howe, and if so, did he have procedures in place to protect against the commission of that error. Whether this argument would prove availing we do not decide because Howe never makes it. Even if he had, we have our doubts about its ultimate success, in light of the significance of the *Livingston* holding and the fact that the decision related to the area of legal practice in which Howe specializes. In the final analysis, Howe's bona fide error affirmative defense lacks evidentiary and legal legs. Conner is thus entitled to summary judgment against Howe under the FDCPA.

### D. *CONNER'S STATE LAW CLAIMS*

#### 1. *Statutory Deceit and Common Law Attorney Deceit*

■ In Indiana, by statute, a person may be held civilly liable for treble damages if, as a result of that person's violation of Indiana's criminal deceit law, he has caused another to suffer pecuniary damages. Ind.Code § 34–24–3–1; *see also, Veach v. Sheeks*, 316 F.3d 690, 694 (7th Cir.2003). Indiana law also recognizes an action for common law fraud or deceit, under which, if the person committing such fraud or deceit is an attorney, treble damages are available. Ind.Code § 33–21–1–8; *see also, Seevers v. Arkenberg*, 726 F.Supp. 1159, 1169 (S.D.Ind. 1989). The legal elements of a common law deceit claim are: 1) an untrue representation of fact, 2) known to be untrue or recklessly made by the party making it, 3)

made for purposes of inducing another party's reliance thereupon, and 4) actual inducement of such reliance to the detriment of that other party. *Seevers*, 726 F.Supp. at 1169; *Anderson v. Anderson*, 399 N.E.2d 391, 403 (Ind.App.1979).

Conner has incorporated both of these theories of recovery in his complaint. Howe responds in seeking a summary ruling in his favor by asserting that there is no evidence of any intent on his part to deceive and in any event Conner has not suffered pecuniary damage that would permit him to recover under this theory of relief. While we disagree with Howe's latter contention, given the evidence of record that Conner paid his attorney $200 to defend the short-lived collection lawsuit Howe had filed against him we agree that the record is devoid of any evidence of deceptive intent.[1]

Howe's affidavit indicates that when this case against Conner was initiated, he was unaware of the *Livingston* decision by the Indiana Supreme Court, the effect of which was to make most, if not all payday loans illegal. Consequently, he was unaware that the allegations of amounts due and owing to ICA in the lawsuit that he had filed were improper under this new legal interpretation. He attests to not intending to violate the FDCPA or to deceive Conner or the court where the collection action was filed. Citing *Ackles v.*

*Hartford Underwriters Insurance Corp.*, 699 N.E.2d 740 (Ind.App.1998), Conner urges us to deny Howe's motion for summary judgment, arguing that Howe's intent to deceive, which is the crucial element, necessarily turns on the question of Howe's credibility.

▮▮ The problem with Conner's argument, in addition to the fact that he bases it on state law when federal and state summary judgment standards differ,[2] is that there is absolutely no evidence raising even the slightest issue regarding Howe's intent to deceive. Conner is correct in noting that all there is in the record is Howe's own statement as to what his intent was; however, he points to nothing in the record that would rebut that statement or suggest otherwise. Even under the Indiana summary judgment standard, where intent is at issue and a party submits an affidavit to that effect, the opposing party is required to provide some contrary evidence in order to survive summary judgment. *See generally, Yater v. Coy*, 681 N.E.2d 232 (Ind. App.1997).

Under federal law, in response to Howe's sworn assertion that he did not possess the requisite intent to deceive, which is an essential element of Conner's claim, the burden shifts to Conner to come forward with evidence from which a rea-

---

1. In *Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003) the Seventh Circuit affirmed summary judgment in favor of an attorney defending against a claim of statutory deceit which, like here, accompanied a claim for a violation of the FDCPA. The appellate court stated that because the plaintiff represented himself in the underlying collection action and on appeal was represented by a public interest law firm, he suffered no financial loss or pecuniary damage which is a condition precedent to recovery under the statutory deceit provisions. *Id.* at 694. That precedent, however, does not apply here, where there is some evidence that the filing of the action against

the plaintiff actually resulted in his incurring out-of-pocket expenses in the form of an attorney's fee for defending against the collection action.

2. For a discussion of the differences between the Indiana summary judgment standard and the federal summary judgment standard and whether Indiana law requires the moving party to prove a negative (such as the lack of intent to deceive), *see. Lenhardt Tool & Die Co., Inc. v. Lumpe*, 722 N.E.2d 824 (Ind. 2000); *Brannon v. Wilson*, 733 N.E.2d 1000 (Ind.App.2000).

sonable fact-finder could conclude that Howe had a deceptive intent. Beyond Conner's simple disagreement with Howe's sworn statement, there is nothing else—no discovery response, deposition, affidavit, or other admissible evidence. *See* S.D.Ind. Local Rule 56.1. Accordingly, Conner cannot escape summary judgment in Howe's favor on these counts.

2. *Abuse of Process*

The tort of abuse of process consists of two elements: (1) ulterior motive and (2) use of process that would not be proper in the normal prosecution of the case. *Watters v. Dinn*, 633 N.E.2d 280, 288 (Ind.App.1994). "The gravamen of [this] tort is not the wrongfulness of the prosecution, but some extortionate perversion of a lawfully initiated process to illegitimate ends." *Heck v. Humphrey*, 512 U.S. 477, 486 n. 5, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Under Indiana law, in order to prevail, the plaintiff must have some evidence tending to show that the defendant used process for an end other than that for which it was designed. *Comfax Corp. v. North American Van Lines Inc.*, 638 N.E.2d 476, 481 (Ind.App.1994). Mere negligence, which in our view would be a fair characterization of Howe's failure to stay apprised of recent Indiana Supreme Court rulings, does not suffice to establish an improper purpose. *See Yater v. Coy*, 681 N.E.2d at 233.

In this case, Howe sought to collect on a debt that ICA had represented to him was owed to it by Conner. Conner has presented no evidence that Howe's action to collect that debt on behalf of ICA was for an end other than that which it was undertaken to accomplish, despite the fact that the debt was void as a matter of law. That Howe had not heard of the *Livingston* decision when he filed suit on behalf of ICA does not demonstrate the requisite ulterior and base motive. In pro-

tecting litigants' interests in court proceedings, lawyers acting on behalf of their clients are given broad protection from claims against them by those who believe they may have wrongfully used the judicial process. *National City Bank, Indiana v. Shortridge*, 689 N.E.2d 1248, 1251 (Ind. 1997). As with our prior discussion regarding Conner's tort claims for deceit, after Howe demonstrated through his affidavit that there was an absence of evidence to support any improper ulterior motive on his part, it was incumbent on Conner to counter with some evidentiary basis to establish at least a question of fact on that essential element of the case. This Conner has not done. Therefore, Howe is entitled to summary judgment on Conner's abuse of process claim.

### CONCLUSION

Our review of all the issues raised by the parties brings us to the considered view that, with regard to Conner's FDCPA claim, there is a case or controversy and that we therefore do not lack subject matter jurisdiction; Howe's Motion to Dismiss accordingly must be DENIED. Because Howe has not contested Conner's claim that, in pursuing the collection of a void debt and the illegal interest charges, he violated the FDCPA, Conner is entitled to summary judgment with respect to Howe's liability for that statutory violation. Hence, Conner's Motion for Partial Summary Judgment is GRANTED. The amount of damages to be awarded on that liability remains to be determined.

Howe is entitled to judgment in his favor with regard to Conner's state law claims of deceit, attorney deceit, and abuse of process because they lack evidentiary and legal support. Therefore, Howe's Counter Motion for Summary Judgment is GRANTED. Entry of Final Judgment shall await a determination of damages

due to Conner for Howe's violation of the FDCPA.