**GOLDEN YEARS HOMESTEAD, INC., Plaintiff,**

v.

**C. Angela BUCKLAND, Diane Nilson, Julie Wagoner, Angela Strass, Brenda Meredith, Marie Owen, Susie Scott, Suzanne Hornstein, and Gregory A. Wilson, M.D., Defendants.**

No. IP02–0771 C B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 11, 2006.

## ENTRY GRANTING ISDH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

This case comes before the Court on the Motion for Summary Judgment [Docket No. 127] filed by Defendants C. Angela Buckland, Diane Nilson, Julie Wagoner, Angela Strass, Brenda Meredith, Marie Owen, Susie Scott, Suzanne Hornstein, and Gregory A. Wilson, M.D. (collectively, the "ISDH Defendants"), pursuant to Fed. R.Civ.P. 56. For the reasons detailed in this entry, we hold that the ISDH Defendants' Motion is well-taken, and hereby GRANT Summary Judgment in their favor.

### Factual Background

Plaintiff Golden Years Homestead, Inc. ("Golden Years") is an Indiana corporation which operates a nursing facility ("the Homestead") in Fort Wayne, Indiana. The Homestead is a licensed nursing facility pursuant to Indiana Code § 16-28-2-1. Golden Years is party to a valid provider agreement permitting participation in the federal Medicaid program. Pl.'s Second Am. Verified Compl. (hereinafter "Compl.") ¶ 3.

The individually named defendants are (or were during the applicable time periods) employees and officials of the Indiana State Department of Health ("ISDH"). ISDH is a state agency responsible for surveying nursing facilities in order to determine compliance with Medicaid participation requirements, as well as for periodic state licensing and recertification purposes and complaint investigation. After surveying the nursing facility, if deficiencies are found, ISDH prepares a

Statement of Deficiencies—or "Form 2567L"—which details any instances of noncompliance found, the regulations violated, and specific findings that support each deficiency determination. *Id.* ¶ 16.

In April of 2000, an ISDH survey team visited the Homestead for a recertification and licensure survey, as well as to investigate a complaint. Based on the survey, ISDH issued a Statement of Deficiencies on May 8, 2000, which cited Golden Years for thirteen Medicaid participation violations and one state licensure requirement violation. Defs.' Mem. ¶ 15. As a result, ISDH sanctioned Golden Years by discontinuing its nurse aide training program for two years. Compl. ¶¶ 17, 18.

ISDH conducted a post-survey revisit of the Homestead two months later, in July 2000. Again, it cited Golden Years for certain instances of noncompliance and imposed sanctions (mandatory in-service sessions and denial of new admissions). Another revisit occurred in September 2000. *Id.* ¶¶ 19, 20. Upon the finding of further deficiencies, ISDH mandated further in-services and indicated that it would revoke Golden Years's Medicaid certification if it did not come into compliance by October 2000. (Golden Years did so, and the revocation threat was lifted by the specified date.)

Golden Years contends that findings in all three of the ISDH surveys were "false, misleading and intentionally meritless,"[1] and undertook appeals of its deficiency citations. It submitted "plans of correction" and requests for informal dispute resolution after all three surveys, and some of the deficiencies were removed by ISDH through this process. Then, Golden Years challenged the majority of the alleged violations during a six-day administrative hearing in June 2001, prompting the ALJ to find that several of the deficiency findings lacked sufficient basis, and then to vacate many (in fact, most) of the citations and the resultant sanctions that had been imposed on Golden Years for each of the three surveys. *See* Defs.' Ex. 13.

Subsequently, ISDH appealed the ALJ's ruling to an ISDH Appeals Panel, which reinstated two of the violations and certain of the sanctions. Golden Years appealed this decision to state court, where the trial court upheld the agency's determination on both deficiencies. A subsequent appeal to the Indiana Court of Appeals resulted in the reversal of one deficiency determination. Golden Years ultimately sought transfer to the Indiana Supreme Court, which was denied. *See* Defs.' Exs. 18, 19; *Golden Years Homestead v. Ind. Dep't of Health,* 822 N.E.2d 982 (2004).

Golden Years has also brought this action in federal court.[2] It claims that, as a result of inappropriate and unfair reporting procedures used by Defendants in the ISDH surveys, it has suffered loss of income, residents, and staff, as well as damage to its reputation. It therefore has brought these federal constitutional claims against the ISDH Defendants, claiming that their actions against Golden Years were arbitrary (in violation of its substantive due process rights under the Fourteenth Amendment) and that it was subjected to unreasonable searches (in vi-

---

1. *Id.* ¶ 21.

2. Initially, Golden Years brought the instant suit against the ISDH Defendants named here, the Centers for Medicare and Medicaid Services ("CMS"—a division of the federal Department of Health and Human Services), and ten unnamed CMS employees (as Doe defendants). However, our entry of July 23, 2004 [Docket No. 109] dismissed all claims against CMS and the Doe Defendants, leaving only Golden Years's claims against the ISDH Defendants.

olation of the Fourth Amendment). Golden Years has also asserted state statutory and common-law claims for costs and fees based on frivolous litigation, abuse of process, and malicious prosecution,[3] for which it seeks compensatory and punitive damages, costs, and fees. The ISDH Defendants seek summary judgment in their favor on each of Golden Years's claims.

*Legal Analysis*

*I. Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255, 106 S.Ct. 2505. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir.2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir.2003).

*II. Collateral Estoppel*

■ Defendants initially contend that Golden Years's claims are barred under the doctrine of collateral estoppel. Collateral estoppel, also known as issue preclusion, "foreclos[es] relitigation in a subse-

---

**3.** Golden Years initially brought an additional claim based on conspiracy to deprive it of its constitutionally protected rights, as well as a statutory claim related to the requirement of proper and accurate surveys under federal Medicaid law. We dismissed those two counts in our entry of March 30, 2004 [Docket No. 105]. *See Golden Years Homestead, Inc. v. Buckland,* 2004 WL 950596 (S.D.Ind. Mar.30, 2004).

quent action of an issue of law or fact that has been actually litigated and decided in [an] initial action." *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.,* 58 F.3d 303, 307 (7th Cir.1995). *See also Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (issue preclusion "protects ... adversaries from the expense and vexation of multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions"). Defendants argue that findings in the administrative hearings (and subsequent judicial review of those proceedings) preclude Golden Years's claims that the ISDH Defendants committed bad or improper acts in the course of the survey process, as "[t]here were no findings of constitutional violations, retaliation, or abuse of government power found by the ALJ, the ISDH Appeals Panel, the Trial Court, [or] the Indiana Court of Appeals." Defs.' Mem. at 20.

■ We accord preclusive effect to the findings of an administrative agency acting in a judicial capacity when a state court would do likewise. *See Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Here, we shall grant such effect to the determinations of the ALJ and the ISDH Appeals Panel, based upon Indiana law. *See Klein v. Perry,* 216 F.3d 571, 572–73 (7th Cir. 2000) ("We believe the Indiana state courts would find that an issue of fact litigated and determined in an agency's decision is preclusive between the parties in a subsequent action, even though a different claim is involved.") (citations omitted); *Fruehauf Corp. v. Review Bd. of Ind. Employment Sec. Div.,* 148 Ind.App. 627, 269 N.E.2d 184, 189 (1971) ("An administrative determination may also operate by way of collateral estoppel ... in a subsequent proceeding ... as to matters actually and legally determined therein.").

However, only those issues *actually litigated* in the prior proceeding are to be granted preclusive effect. "[T]he former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. Collateral estoppel does not extend to matters that were not expressly adjudicated and that can be inferred from the prior adjudication only by argument." *Crosson v. Berry,* 829 N.E.2d 184, 192 (Ind.Ct.App.2005). *See also Freeman United Coal Mining Co. v. Office of Workers' Comp. Program,* 20 F.3d 289, 294 (7th Cir.1994) (declining to apply collateral estoppel when the issue sought to be precluded was not identical to that previously presented). Accordingly, Golden Years contends that its claims are not precluded by collateral estoppel, because no dispositive issues in this case were actually litigated in the state proceedings. Pl.'s Resp. at 24.

We agree with Golden Years's argument. The administrative proceedings (and subsequent state judicial review) focused on the deficiency findings themselves, and whether there was a sufficient factual basis to warrant the citations issued by ISDH. *See* Defs.' Exs. 13, 16–18. As Golden Years points out, the ISDH Defendants have not articulated specific elements or facts in this case which they claim are barred from consideration here based on collateral estoppel; rather, they state generally that "[t]here were no bad acts found against the ISDH employees in the administrative or state proceedings." Defs.' Mem. at 20. True enough; however, the prior proceedings were not concerned with the *manner* in which the record was gathered, which is what Golden Years is alleging in this litigation was tortious and unconstitutional. While the veracity of the deficiency findings may have

some bearing on the issues before us here—for example, as evidence of bad motive, or a lack thereof—we cannot say that the issues at bar are identical to those adjudicated in the prior proceedings. *See Montana,* 440 U.S. at 155, 99 S.Ct. 970 (collateral estoppel applies only when questions "expressly and definitely presented in this suit [are] the same as [those] definitely and actually litigated and adjudged" in a prior proceeding) (citation omitted).

Defendants rely extensively on *Beechwood Restorative Care Center v. Leeds,* 317 F.Supp.2d 248 (W.D.N.Y.2004). However, our reading of that case makes it readily distinguishable from the case before us. In *Beechwood,* a nursing home brought § 1983 and *Bivens* actions against state and federal officials, alleging that they forced the nursing home to be shut down in a deliberate misuse of their regulatory powers. The district court applied

preclusive effect to the findings of an ALJ. However, unlike the case at bar, that administrative proceeding (in *Beechwood)* had specifically addressed whether the officials had exhibited any improper motive, resulting in a finding that they did not. *Id.* at 267 (stating that the officials "did ... litigate those issues, at considerable length" in the administrative proceeding).[4] Here, the record before us does not indicate that these issues were ever specifically adjudicated[5]—and Defendants fail to point out instances in which they were— rendering *Beechwood* inapposite.[6]

Thus, we hold that Plaintiff's claims are not precluded by the doctrine of collateral estoppel, and proceed to the merits of its contentions.

### III. Golden Years's Constitutional Claims

For Golden Years to prevail on its federal constitutional claims against the ISDH

---

**4.** In addition to being distinguishable, it should be noted that the *Beechwood* decision cited by Defendants is no longer good law. *See Beechwood Restorative Care Center v. Leeds,* 436 F.3d 147 (2nd Cir.2006). The Second Circuit vacated the decision as to issue preclusion, based on the fact that the ALJ finding that the officials were unbiased was not necessary to support a valid and final judgment on the merits—a requirement for preclusive effect to attach. *See id.* at 152–53.

**5.** The only point in the proceedings at which Defendants attempt to illustrate that the issues of motive and manner were adjudicated is a three-page portion of the ALJ hearing transcript. Defs.' Ex. 20. This part of the transcript consists of portions of the closing argument of Plaintiff's counsel, in which he describes the survey reports as "exaggeration and omission," and makes statements such as "if the process worked properly and [the surveyors] took into account exculpatory material, most of this wouldn't have been here." As Defendants point out, there were more than 1000 pages of transcribed testimony from the administrative proceedings. Defs.' Mem. at 23. Other than this three-page segment, De-

fendants cite no other specific instances of testimony, nor (and more importantly) *any* findings of fact or conclusions of law in the ALJ's order or any of the subsequent administrative and judicial opinions, related to these issues. Clearly, the core of the prior proceedings was the accuracy of the deficiency citations themselves, *not* the manner in which they were identified and recorded, and this reference by Defendants does not illustrate otherwise.

**6.** Though Defendants do not specify points in the administrative proceedings in which the manner and motive of the ISDH surveys were adjudicated, they do state repeatedly that Golden Years has "had the opportunity" to litigate these issues. Defs.' Mem. at 23. This is irrelevant, however. For issue preclusion to apply, the issues must have been *actually litigated. See United Shoe Mach. Corp. v. United States,* 258 U.S. 451, 459, 42 S.Ct. 363, 66 L.Ed. 708 (1922) (for issue preclusion to apply, "the inquiry must always be as to the point or question actually litigated and determined in the original action, *not what might have been thus litigated and determined")* (emphasis added).

Defendants, brought pursuant to 42 U.S.C. § 1983, it must establish that the conduct it complains of was committed by a person acting under color of state law and that the activity deprived it of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Case v. Milewski,* 327 F.3d 564, 566 (7th Cir.2003). Golden Years has brought its claims under the Fourth and Fourteenth Amendments. We discuss each below in turn.

### A. Golden Years's Fourth Amendment Claim

■■■■ Golden Years contends that the ISDH Defendants violated its right to be free of unreasonable searches and seizures. It is well-established that "the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes." *New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). Thus, a commercial business may have a reasonable expectation of privacy in its property, giving rise to Fourth Amendment protection. Moreover, "[t]his expectation exists not only with respect to traditional police searches ... but also with respect to administrative inspections designed to enforce regulatory statutes." *Id.* at 699–700, 107 S.Ct. 2636. However, the expectation of privacy in commercial premises is less than that in a private residence, and is "particularly attenuated" in closely regulated industries. *Id.* at 700, 107 S.Ct. 2636. *See Marshall v. Barlow's, Inc.,* 436 U.S. 307, 313, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) ("Certain industries have such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise.").

■■■■ Several courts have ruled that nursing homes are such a closely regulated industry, thus possessing a reduced (or nonexistent) reasonable expectation of privacy. *See, e.g., Blue v. Koren,* 72 F.3d 1075, 1080–81 (2nd Cir.1995) ("We believe that nursing homes' right of privacy with regard to matters related to their compliance with patient care rules and regulations is even less that 'attenuated.' It is virtually non-existent."); *Beverly California Corp. v. Shalala,* 78 F.3d 403, 408–09 (8th Cir.1996) (rejecting a nursing home's Fourth Amendment claim because "nursing homes are part of a closely-regulated industry, ... the government has a substantial interest in ensuring the health and safety of Medicaid patients, and ... warrantless inspections are necessary to serve that substantial government interest"); *People v. Firstenberg,* 92 Cal.App.3d 570, 155 Cal.Rptr. 80 (Cal.Ct.App.1979); *Uzzillia v. Comm'r of Health,* 47 A.D.2d 492, 367 N.Y.S.2d 795 (N.Y.App.Div.1975).

Golden Years argues that Defendants' "practice of omitting evidence from their surveys and taking facts out of their context is a search conducted in an unreasonable manner[.]" Compl. ¶ 36. It contends that Defendants "exclud[ed] accurate, probitive [sic] evidence from their surveys" (Pl.'s Resp. at 2) which would have been favorable to Golden Years, and that a material issue of fact exists as to whether the training materials on which Defendants relied in conducting their searches instructed them to do so. *Id.* at 3. As evidence of this claim, Golden Years cites portions of the training materials (distributed by CMS) which instruct Defendants to be "objective" and "factual" with regard to their investigations, to describe each discrete item of information observed or discovered, and other similar instructions. Golden Years also cites deposition testimony establishing that the training materials instruct the surveyors (among other instructions) to "review and analyze all information collected and to determine

whether or not the facility has failed to meet one or more of the regulatory requirements." Buckland Dep. at 85. Golden Years contends that, in contrast to these requirements, "the State Defendants collect evidence favorable to the nursing home as they take notes during the survey ... [w]hen it comes time to prepare the survey and create a record, however, this favorable evidence is omitted from the process and not included in the survey report used against Golden Years." [7] Resp. at 4–5. This practice, Golden Years maintains, makes it impossible to challenge deficiency citations without costly and time-consuming administrative procedures. *Id.* at 9.

Golden Years further argues that there are issues of material fact as to whether Defendants had a "retaliatory motive" that impacted the manner in which the surveys were conducted.[8] Golden Years asserts that "[t]he evidence shows that the de-

meanor and attitude of the State Defendants changed during their May, 2000 survey of the facility and that they became upset and hostile towards Golden Years" with respect to a difference of opinion about a resident's medication and what the federal guidelines required. *Id.* at 10. Golden Years states that relations between its employees and the Defendants began to deteriorate after this confrontation, citing an incident in which a defendant allegedly screamed at a Golden Years employee during a survey, and another time when one defendant derided Golden Years's Plan of Correction as "crap" or "crud." *Id.*, citing Strass Dep. at 161–62.

Defendants assert that Golden Years has not provided evidence sufficient to preclude summary judgment on its theory that ISDH targeted it maliciously, that Defendants acted in any way contrary to law, or that the Defendants ignored probative evidence in conducting the surveys.[9]

---

**7.** For example, Golden Years cites the testimony of one surveyor who testified that "there were positive things in my notes that wouldn't have been put into the report that were positive things for Golden Years." The surveyor goes on to note that these facts "weren't pertinent." Buckland Dep. at 114–15.

Golden Years also cites some specific examples of situations in which surveyors apparently considered information to be extraneous which Golden Years considered pertinent. For example, the May 2000 survey report contained an observation about a resident who had been losing weight at a pace which concerned a family member. The surveyor observed that the resident distributed her lunch to other residents, and then noted an aide charting (erroneously) that the resident had eaten 100% of her meal. The report states that the staff was not adequately monitoring the resident at mealtimes. However, the surveyor did not mention that the resident was still above her acceptable weight range, considering this to be "extraneous information." Golden Years argues (and its expert, a nursing facility consultant, agrees) that a resident's ideal weight range is pertinent when

determining outcomes related to nutritional status. Resp. at 6–8.

**8.** In addition, Golden Years argues that "motive is irrelevant as a matter of law to [its] Fourth Amendment claim," relying on *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) to support its contention that " 'ulterior motives' of a state actor have no place in a Fourth Amendment analysis and cannot form the basis for summary judgment" on its claim. Resp. at 16. In fact, the holding in *Whren* suggests that the opposite is true. The Supreme Court there stated that it had "never held, *outside the context of inventory search or administrative inspection* ..., that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment[.]" 517 U.S. at 812, 116 S.Ct. 1769 (emphasis added). With respect to administrative searches, the Court articulated several examples indicating that the motive behind a search *could* be relevant. *Id.* at 811–12, 116 S.Ct. 1769. Thus, Plaintiff's assertion in its briefing to us is incorrect.

**9.** It should be noted that, though Defendants have moved for summary judgment under

Rather, Defendants assert that the evidence demonstrates that they were simply doing their jobs, in compliance with federal and state law. Defs.' Mem. at 15. They argue that Golden Years has failed to demonstrate that any material issue of fact exists as to whether the ISDH Defendants are instructed to exclude exculpatory evidence from their reports; in fact, Defendants agree with Plaintiff that they are nowhere instructed to do so. However, they do contend that their training materials instruct them to exclude *extraneous* information from the surveys, that is to say, information unrelated to the determination of noncompliance.[10] Reply at 2. For example, they cite the following from the 2000 "Principles of Documentation" manual:

> The deficiency citation should contain only the evidence to support the determination of non-compliance.... Inclusion of extraneous comments or consultative remarks in citations may lead to confusion.... To decrease confusion, documentation in the HCFA–2567 contains only the citation and evidence to support the determination on non-compliance. Extraneous information that is not relevant to demonstrating noncompliance with the specific requirement should be avoided.[11]

In light of our review of the arguments presented by both parties and the exhibits submitted by each side, while construing all facts in the light most favorable to Golden Years, we hold that a reasonable fact-finder could not find that the ISDH Defendants conducted their surveys in an unreasonable manner so as to give rise to a Fourth Amendment claim. As described above, *Blue* and *Beverly* hold that a nurs-

---

Fed.R.Civ.P. 56, they phrase some of their challenges to Golden Years's claims in terms of Golden Years's "fail[ure] to state a claim upon which relief can be granted." Resp. at 14. However, as Plaintiff duly notes, we have already resolved the issue of whether the Complaint states claims against Defendants. *See* Entry of March 30, 2004. Moreover, in our entry of that date on Defendants' Rule 12(b)(6) Motion to Dismiss, we pointed out that Defendants had selected a "peculiar" procedural approach by "argu[ing] as though they [we]re seeking judgment on the pleadings," implying that they may have had Fed. R.Civ.P. 12(c) in mind. We gave Defendants the benefit of the doubt then, and we are prepared to do so again here, though we are somewhat disconcerted by this second procedural misstep. Even though some of their arguments are oddly phrased, given the current posture of this case, we are treating them as requests for summary judgment here, in large part because both parties have had a reasonable opportunity to present all material relevant to summary judgment, and clearly anticipate a summary judgment ruling. *Cf. In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2nd Cir.1985) (holding that the "essential inquiry" in conversion of a Rule 12(b)(6) motion to a Rule 56 motion "is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings").

**10.** Golden Years challenges the ISDH Defendants' reliance on certain training materials (such as a training videotape), claiming that they are inadmissible hearsay. Resp. at 20–22. Defendants respond that the materials are not offered for the truth of the matters asserted within them, but rather to show information upon which Defendants acted. We accept Defendants' proffer and shall consider the evidence before us. *See, e.g., United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir.1984) ("An out-of-court statement is hearsay only if it is offered for its truth. An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth. The orders or instructions were offered to show that they occurred rather than to prove the truth of something asserted.") (citations omitted). *See also United States v. Keane*, 522 F.2d 534, 558 (7th Cir.1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976).

**11.** Defs.' Ex. 8–C at 10.

ing facility has, at most, a very attenuated expectation of privacy meriting Fourth Amendment protection, and that regulatory inspections ordinarily do not offend any existing right. Thus, a search would have to be unreasonable in manner or effect— that is, outside the statutory and regulatory guidelines—in order to support relief under the Fourth Amendment. *See* our Entry of March 30, 2004. We are unpersuaded that a reasonable jury could ever so find in this case. The training documents submitted by both parties illustrate that the surveyors acted within the bounds of their training. Their omission of extraneous positive facts from the surveys appears not only to be entirely reasonable, given the nature of the regulatory task with which they were tasked, but required by the Principles of Documentation manual. Form 2567–L is not intended to be a brochure or advertisement for Golden Years. It is a regulatory document drawn up to ensure the safety and health of elderly, dependent residents in nursing home facilities. No evidence has been adduced to demonstrate that the surveyors acted unreasonably or maliciously in determining what information to exclude from the reports.

We also remain unpersuaded by the claim of a lack of civility between the surveyors and the Golden Years staff. Whether the ISDH Defendants could have been more patient and more polite in their dealings with Plaintiff is not the issue here because, even assuming such departures from civility as those described here occurred, they simply do not rise to the level of a constitutional violation. Therefore, we hereby GRANT Defendants' Motion for Summary Judgment with respect to Plaintiff's Fourth Amendment claim.

### B. Golden Years's Fourteenth Amendment Claim

Golden Years has also brought a Fourteenth Amendment claim against Defendants, arguing that Defendants, while operating under color of law, deprived it of its right to be free from arbitrary government action, by "citing unsupported deficiencies, intentionally excluding exculpatory and positive facts from survey reports, and pursuing meritless actions based exclusively on these wrongful activities." Compl. ¶ 31. Golden Years further alleges that Defendants generated multiple, duplicative surveys and brought retaliatory claims against it, in violation of its due process rights. *Id.* ¶ 34.

■ Substantive due process rights are "intended to secure the individual from the arbitrary exercise of the powers of government." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662 (1986) (citing *Bank of Columbia v. Okely,* 4 Wheat. 235, 17 U.S. 235, 244, 4 L.Ed. 559 (1819)). The due process clause restrains state actions which fundamentally offend our sense of justice or shock the conscience. *White v. Rochford,* 592 F.2d 381, 383 (7th Cir.1979). *See also County of Sacramento v. Lewis,* 523 U.S. 833, 846–49, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' ... [C]onduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.").

■ We do not find such conscience-shocking conduct here. As we have previously stated, the ISDH Defendants acted reasonably (if not always politely) in pursuing their regulatory goals. Clear government interests to protect the infirmed and elderly underlay their actions. As they have expressed it, "[r]egulating

Indiana's healthcare facilities is not just a government interest for ISDH; it is a crucial part of the agency's mission." Defs.' Mem. at 16. There is no evidence to establish a genuine factual issue regarding the fact that Defendants conducted themselves according to federal and state regulations, CMS rules, and established principles of documentation. *See id.* ¶¶ 14, 29, 31–32. In the closely-regulated industry of skilled nursing care, in which regulations mandate stringent licensing requirements and regular inspections, ardent enforcement of such regulations is to be applauded and reinforced. We readily conclude that ISDH's activities are "consistent with a zealous adversarial posture arising from the regulatory mission." *Beechwood,* 436 F.3d at 153. Thus, Defendants' Motion for Summary Judgment must be GRANTED with respect to Plaintiff's Fourteenth Amendment Claim.

### IV. Golden Years's State Law Claims

Golden Years also has brought state law claims based on the same alleged conduct by ISDH on which the constitutional claims are premised. Defendants contend that, having granted summary judgment on the federal claims, we should dismiss the state law claims due to lack of supplemental jurisdiction under 28 U.S.C. § 1367. Section 1367(c) provides that we "may decline to exercise jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." We decline to dismiss the state law claims here, however, noting our discretion (*"may* decline") to do so under the statute. It is true that the "general rule" in our circuit provides that, when "the federal claim drops out before trial ... the federal district court should relinquish jurisdiction over the supplemental claim." *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir.1997). However, one important exception to the

rule holds: "if it is absolutely clear that the pendent claim can be decided in only one way, the district judge can and should decide it, to save the time of the state court." *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n,* 892 F.2d 575, 578 (7th Cir.1989). *See also Boyce v. Fernandes,* 77 F.3d 946, 951 (7th Cir.1996) ("if the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody"). That is our conclusion here, and therefore we proceed to a review of the merits of Golden Years's state claims.

Golden Years has advanced three separate but interrelated state claims. First, it brings a claim for costs and attorney's fees, pursuant to Indiana's general recovery rule, codified at Ind.Code § 34–52–1–1. That statute provides that a court may award attorney's fees to the prevailing party, if the court finds that either party (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless; (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or (3) litigated the action in bad faith. Golden Years clearly cannot prevail on this claim, because it has not prevailed on its federal claims. Defendants' defenses have proven meritorious, not frivolous, nullifying any showing that they were made in bad faith. Thus, summary judgment is GRANTED to Defendants on this claim for costs and attorney's fees.

 Second, Golden Years brings tort claims based on abuse of process and malicious prosecution. An abuse of process claim consists of "(1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Lindsay v. Jenkins,* 574 N.E.2d 324, 326 (Ind.Ct.App.1991).

Malicious prosecution requires proof that "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Crosson v. Berry,* 829 N.E.2d 184, 189 (Ind.Ct.App.2005). Plaintiff contends that Defendants' deficiency citations and administrative appeals constitute malicious prosecution.

■ Clearly, these claims cannot survive. Though we do not doubt that there may be other meritorious defenses to Plaintiff's tort claims, we can quickly dispose of both claims by focusing on the shared element in each pertaining to malicious (or ulterior) motive. Improper motive can be inferred from the circumstances surrounding an action. *See Kroger Food Stores, Inc. v. Clark,* 598 N.E.2d 1084, 1089 (Ind.Ct.App.1992) ("the element of malice may be inferred from a total lack of probable cause, from the failure to make a reasonable or suitable inquiry, and from a showing of personal animosity"). The lack of substantial evidence here makes summary judgment as to motive unavoidable. Aside from the allegations about improper surveying techniques (discussed above), the only specific evidence of "bad intent" presented by Golden Years is: that one of the defendants raised her voice to a Golden Years employee; that another used the word "crap" or "crud" in describing its Plan of Correction; and that an incident occurred in which a defendant repeatedly slammed a door, allegedly in order to obtain unfavorable evidence against Golden Years regarding the security of a wing. These incidents, while arguably unpleasant, are simply insufficient to create a genuine issue of material fact regarding malicious intent. As the *Blue* court stat-

ed, "Nursing homes are a highly regulated industry, and some tension between operators of homes and regulators is to be expected, as are occasional adversary proceedings." 72 F.3d at 1084–85. This industry is uniquely subject to stringent regulations for good reasons, a few of which we have noted previously, which will at times make virtually unavoidable certain conflicts between the providers and the regulatory surveyors. Absent any demonstration that Defendants acted in an excessively negative, improper, or malicious fashion, we cannot sustain the viability of Plaintiff's state tort claims. Thus, summary judgment must be GRANTED to Defendants on these state claims as well.

*Conclusion*

Having found no genuine issues of material fact to exist, and that Defendants are entitled to judgment as a matter of law as to all claims, we hereby GRANT the ISDH Defendants' Motion for Summary Judgment in its entirety, with Final Judgment to be entered accordingly. IT IS SO ORDERED.