In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-1100

GOLDEN YEARS HOMESTEAD,
INCORPORATED,

*Plaintiff-Appellant,*

*v.*

C. ANGELA BUCKLAND, DIANE NILSON,
JULIE WAGONER, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 02 C 771—**Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 18, 2008—DECIDED FEBRUARY 19, 2009

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Golden Years Homestead, Inc.,
operates a licensed nursing facility in Fort Wayne,
Indiana, and participates in the Federal Medicaid pro-
gram. As such, it is subject to periodic inspections, or
"surveys," by the Indiana State Department of Health.
Golden Years underwent a series of surveys in 2000 and

was cited for numerous Medicaid-participation and state-licensing violations. All but one of the citations, however, were dismissed after administrative and judicial review. Golden Years then brought this suit against the inspectors alleging violations of its Fourth and Fourteenth Amendment rights and also asserting state-law claims for malicious prosecution and abuse of process. The district court concluded that Golden Years' evidence was insufficient as a matter of law on all claims and entered summary judgment for the inspectors.

On appeal, Golden Years challenges only the dismissal of its state-law claims, raising both procedural and substantive arguments. As to procedure, Golden Years argues that because the inspectors never asked for a merits dismissal of the malicious-prosecution and abuse-of-process claims, the district court's order amounted to an improper sua sponte entry of summary judgment on these claims. As to substance, Golden Years contends that its evidence of unprofessional and abusive conduct by the inspectors, considered together with the fact that only one of the original citations survived administrative and judicial review, raised a material issue of fact on the state-law claims.

We reject both arguments and affirm. The inspectors sought summary judgment on *all* claims, and although they focused most of their argument on certain affirmative defenses and the sufficiency of the proof on the federal claims, they did assert that Golden Years' evidence raised no material issues of fact as a general matter. As importantly, Golden Years responded on the substance

of the state-law claims in its brief in opposition. The deficiency that led the court to dismiss the federal claims—lack of sufficient evidence that the inspectors behaved unreasonably or harbored any improper motive—also required dismissal of the state-law claims. Accordingly, the district court's order was not an improper sua sponte summary judgment on the state-law claims. Summary judgment was also appropriate on the merits; the state-law claims require proof of malice or ulterior motive, and there was insufficient evidence of that here.

## I. Background

In the spring of 2000, the Indiana State Department of Health sent a team of inspectors to conduct an annual recertification survey of Golden Years' nursing facility in Fort Wayne. The agency had also received a complaint about the facility, so the annual survey doubled as a complaint inspection. The survey was conducted over a period of ten days in late April and early May. At some point, a disagreement arose between Golden Years' Director of Nursing and one of the inspectors over the requirements of a particular federal regulation. When the Director of Nursing challenged the inspector's interpretation, the inspector "became very upset" at being second-guessed. The Director testified that the inspectors as a group "gave me the impression that they felt I shouldn't be doing that, that I shouldn't be standing up for what I believed was right and know the regulations and be able to quote back to them. They didn't like it at all."

For the remainder of the inspection, the inspectors subjected Golden Years and its staff to verbal and other abuse. Among other things, the inspectors: loudly criticized Golden Years' staff in front of patients and visitors; repeatedly slammed the door to the facility's Alzheimer's wing in an effort to obtain a failure to lock; and omitted favorable information from their report. In Golden Years' view, the inspectors were too quick to dismiss exculpatory information identified by its staff, in one instance calling it "crap" or "crud." The inspectors also failed to consider benign explanations for some of their negative findings. As proof of this, Golden Years cites two examples: In their report the inspectors recorded that a patient was seen with excrement on her hand when it was really a bit of dried sweet potato; the inspectors also documented that another patient had experienced a significant weight loss, but failed to note that this patient had been 20 pounds overweight when admitted. Golden Years maintains that the inspection was so hostile and accusatory that it caused 10 to 15 of its nurses to quit.

Follow-up surveys were conducted over the summer, and Golden Years was ultimately cited for 17 violations of Medicaid-participation and state-licensing rules. Golden Years brought an administrative appeal and a six-day hearing ensued. The inspectors admitted as a general matter that they had omitted information favorable to Golden Years from their report but explained that they had been trained to include only the information related to the cited deficiencies.

An administrative law judge reversed all but one of the citations. After further administrative appeals and judicial review in state court, the original administrative determination was affirmed, leaving only one substantiated regulatory violation. Golden Years then filed this lawsuit against the inspectors and certain of their supervisors (collectively, "the inspectors") asserting claims pursuant to 42 U.S.C. § 1983 for violation of its Fourth and Fourteenth Amendment rights, along with claims under Indiana law for abuse of process and malicious prosecution.[1]

The inspectors moved for summary judgment on all claims. They focused their arguments, however, on certain affirmative defenses (most notably collateral estoppel and qualified immunity) and the sufficiency of the evidence on the federal claims. They argued that the instances of incivility were insufficient to support a violation of either Fourth or Fourteenth Amendment rights and that the inspectors had conducted a reasonable survey in accordance with their training. For support they submitted training materials from the Centers for Medicare and Medicaid Services ("CMS") that instruct inspectors to include in their reports only the information relevant to potential violations. They also

---

[1] Golden Years later joined the Centers for Medicare and Medicaid Services ("CMS"), the federal agency which administers Medicare and Medicaid, alleging that to the extent CMS teachers had trained the inspectors to ignore exculpatory evidence, CMS had also violated Golden Years' rights. The claims against CMS were later dismissed.

argued that because Golden Years had successfully de-
feated most of the citations through administrative and
judicial review, its claims were barred. Although they
did not explicitly address the substantive merits of the
state-law claims, they asserted as a general matter that
"[t]here are no genuine issues of material fact with
respect to this matter" and asked for dismissal of all
claims. In its response to the motion, Golden Years at
length addressed the substance of both its federal and
state claims.

The district court granted summary judgment for the
inspectors and dismissed all claims on the merits. *Golden
Years Homestead, Inc. v. Buckland*, 466 F. Supp. 2d 1059
(S.D. Ind. 2006). Noting that nursing homes are heavily
regulated and expectations of privacy in this context are
thus attenuated, the court held that the evidence was
insufficient to establish that the surveys had been con-
ducted or citations issued in an unreasonable manner,
for any improper motive, or "shocked the conscience"
for purposes of the Fourth and Fourteenth Amendment
claims. *Id*. at 1066-70. The court also held that because
both of the state-law claims required an element of im-
proper motive, the evidence was insufficient on these
claims as well. *Id.* at 1070-71. As the judge saw it, the
incidents of incivility and excessive investigatory zeal
and the omission of some favorable information from
the inspectors' report was simply not enough to estab-
lish a constitutional violation or the torts of malicious
prosecution or abuse of process.

## II. Analysis

We review a district court's grant of summary judgment de novo, viewing the evidence and inferences in the light most favorable to Golden Years. *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 671 (7th Cir. 2002).

Golden Years first argues that the district court improperly entered summary judgment on the state-law claims sua sponte, without giving it an opportunity to respond. "While not encouraged, a district court can enter summary judgment *sua sponte,* or on its own motion, under certain limited circumstances." *Simpson v. Merchs. Recovery Bureau, Inc.,* 171 F.3d 546, 549 (7th Cir. 1999); *see also Aviles v. Cornell Forge Co.,* 183 F.3d 598, 604 (7th Cir. 1999). However, "granting summary judgment *sua sponte* warrants special caution" and generally requires that the party against whom summary judgment is entered have notice and an opportunity to present its evidence. *Simpson,* 171 F.3d at 549.

Under the circumstances here, the district court's entry of summary judgment on the state-law claims cannot be characterized as purely sua sponte. In their summary-judgment motion and memorandum in support, the inspectors specifically asked for dismissal of *all* the claims in the lawsuit. In addition to arguing several affirmative defenses, the basis for the inspectors' motion was that Golden Years' evidence was insufficient to establish that the inspectors had behaved unreasonably or arbitrarily, harbored any improper motive or personal animus, or otherwise engaged in behavior that

shocked the conscience. Although these arguments were presented in the discussion of the § 1983 claims, the inspectors also argued, as a general matter, that "[t]here are no genuine issues of material fact with respect to this matter" and asserted entitlement to judgment as a matter of law on all claims.

It is true that the inspectors did not develop an argument on the substance of the malicious-prosecution or abuse-of-process claims. But Golden Years took the opportunity in its response to the motion to present its evidence and argument on the state-law tort claims, and specifically addressed whether the evidence was sufficient to create an issue for trial on the elements of malicious prosecution and abuse of process under Indiana law—especially the element of improper motive common to both claims. Golden Years has not identified any significant evidence that it omitted. The evidence relating to the inspectors' possible retaliatory motive was the same for the state-law claims as the federal constitutional claims, as was the district court's rationale for entering summary judgment on each category of claim.

In proceeding to the merits of the state-law claims, the district court duly considered 28 U.S.C. § 1367, which provides that the district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The court noted the general rule in this circuit that when "the federal claim drops out before trial, . . . the federal district court should relinquish jurisdiction over the supplemental claim." *Van Harken v. City*

*of Chicago,* 103 F.3d 1346, 1354 (7th Cir. 1997). But the court thought this case fell within an exception to the general rule that applies when it is very clear that the supplemental claim is meritless. *Boyce v. Fernandes,* 77 F.3d 946, 951 (7th Cir. 1996) ("[I]f the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody."). Under the circumstances here, this was not procedurally improper.

Nor was the entry of summary judgment on the state-law claims substantively improper. Under Indiana law, "[t]he elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005). Malice may be shown by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances. *F.W. Woolworth Co. v. Anderson*, 471 N.E.2d 1249, 1254 (Ind. Ct. App. 1985).

Golden Years argues that the disagreement between its Director of Nursing and one of the inspectors is evidence that the inspectors' subsequent behavior was motivated by personal animosity. But this incident was insufficiently personal and too benign to support a finding of malice as required for this tort. Golden Years relies on *Anderson* and *Kroger Food Stores, Inc. v. Clark*, 598

N.E.2d 1084, 1089 (Ind. Ct. App. 1992), but these cases are factually distinguishable.

In *Anderson*, a Woolworth auto-parts manager was acquitted on charges that he was stealing from the store and then sued his employer for malicious prosecution. He established that the charges had been initiated by store employees whom he had previously turned in for sexual harassment and theft. 471 N.E.2d at 1254. He also established that he had been handling register deposits in accordance with specific instructions given to him by one of the employees who later investigated him, yet the investigator ignored that fact. *Id.* at 1252.

In *Clark*, a grocery-store cashier was acquitted on theft charges initiated by her employer and then brought suit for malicious prosecution. She presented evidence that the supervisor who investigated her harbored personal animus against her because of a previous dispute with the union. 598 N.E.2d at 1089. Also, the supervisor's surveillance of the cashier had produced no evidence that the cashier had engaged in any illegal activity, and the cashier's accounting practices, which the supervisor had claimed were unusual, were the same as every other employee's. *Id.* at 1087-88.

Here, there is no comparable history between any of the inspectors and the Director of Nursing from which to infer personal animosity. That the inspector "didn't like it" that the Director of Nursing could quote the relevant regulations is simply insufficient to support a finding of personal animus. Golden Years also suggests that the inspectors' obnoxious behavior, which began

after the Director of Nursing asserted herself, is evidence of personal animus. We disagree. Raised voices and repeated door-slamming in order to induce a lock to malfunction suggest that the inspectors were over-zealous, overbearing, and unprofessional, but not that they were motivated by personal animus.

Golden Years also claims that a reasonable jury could infer malice from an absence of an adequate investigation by the inspectors. On this point, Golden Years suggests that the dismissal of all but one of the citations on administrative and judicial review is evidence that the inspectors failed to conduct an adequate investigation. Golden Years also points to the inspectors' admission before the administrative law judge that they sometimes omitted extraneous information from their reports as evidence of an inadequate investigation. However, Golden Years has not challenged the district court's determination, in connection with the dismissal of the Fourth Amendment claim, that the inspectors conducted a reasonable inspection. We will assume for the moment that a reasonable inspection (in the constitutional sense) might at the same time be deemed so inadequate as to give rise to an inference of malice for purposes of the tort of malicious prosecution under Indiana law. But Golden Years has discussed only two allegations that the inspectors failed to adequately investigate: (1) the allegation that a patient had excrement on her hand (it was actually dried sweet potato); and (2) the allegation that a patient sustained a significant weight loss (it turned out that the patient was 20 pounds overweight when admitted). The failure to thoroughly investigate these

two allegations is insufficient to support an inference of malice; Golden Years has not identified any other specific instances of inadequate investigation by the inspectors.

Golden Years' claim for abuse of process fares no better. "The elements of abuse of process are 1) an ulterior motive or purpose, and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. Ct. App. 1991). An ulterior motive for purposes of this tort may include a desire "to embarrass, annoy and ridicule." *Id.* Mere negligence, however, is insufficient. *Conner v. Howe*, 344 F. Supp. 2d 1164, 1175 (S.D. Ind. 2004); *Yater v. Coy,* 681 N.E.2d 232, 233 (Ind. Ct. App. 1997).

Golden Years argues that the incident between the inspector and the Director of Nursing, when combined with the rude and abusive behavior of the inspectors that followed it, is sufficient to permit an inference of ulterior motive. As we have already noted, however, while this behavior was unprofessional, it does not support an inference that the inspectors harbored ulterior motives. The sole case Golden Years cites, *Lindsay,* is easily distinguishable. There, the litigants had a long-running dispute over a setback ordinance, including proceedings before the local zoning board as well as active prior litigation; the Indiana appellate court held that this history could conceivably support a finding of ulterior motive and reversed a summary judgment that had been entered in favor of the defendant. *Lindsay*, 574 N.E.2d at 325.

In contrast, here there was no such history; it is undisputed that the relationship between Golden Years and Department of Health inspectors had previously been cordial. Indeed, Golden Years' president had written letters to the Department of Health complimenting its inspectors' professionalism. Golden Years simply has not presented sufficient evidence from which a reasonable jury could infer that the inspectors issued the citations because of an improper ulterior motive.

Accordingly, the judgment of the district court is AFFIRMED.